# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

MICHAEL ROBERT HILL,

     Plaintiff,

                                 CASE NO.  02-CV-10290-BC

v.

                                 DISTRICT JUDGE DAVID M. LAWSON

KURTZ GRAVEL COMPANY,         MAGISTRATE JUDGE CHARLES BINDER

     Defendant;

and                             **CONSOLIDATED CASES**

MICHAEL ROBERT HILL,

     Plaintiff,

v.                                 CASE NO. 03-CV-10247-BC

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND,

     Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION TO REVERSE THE ADMINISTRATOR'S DECISION
## OR TO REMAND AND TO PERMIT DISCOVERY
(Dkt. 71)[1]
## DEFENDANT CENTRAL STATES' MOTION
## FOR JUDGMENT ON THE ADMINISTRATIVE RECORD
(Dkt. 70)
## AND DEFENDANT KURTZ GRAVEL COMPANY'S MOTION
## FOR JUDGMENT ON THE ADMINISTRATIVE RECORD
## OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT[2]
(Dkt. 72)

---

[1] All docket numbers referred to in this Report and Recommendation are taken from Dkt. No. 02-CV-10290-BC.

[2] There is some doubt whether summary judgment is an appropriate means by which to dispose of denial of benefits claims under ERISA; therefore, I suggest the Motion for Judgment on the Administrative Record caption is preferable. *See Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 616-20 (6th Cir. 1998).

I.      **RECOMMENDATION**

**IT IS RECOMMENDED** that Plaintiff's Motion to Reverse the Administrator's Decision or to Remand and Permit Discovery be **DENIED**, that Defendant Central States' Motion for Judgment on the Administrative Record be **GRANTED**, and that Defendant Kurtz's Motion for Judgment on the Record be **GRANTED**.

II.     **REPORT**

A.      **Introduction**

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on October 8, 2003.  (Dkt. 2.)  Pending are the above-entitled motions filed in these consolidated cases.  Responses and replies have been filed to each motion.  (Dkts.  74, 75, 76, 77, 80.)  Oral argument was heard October 6, 2005.  Upon review, I conclude that these motions are ready for Report and Recommendation.

B.      **Factual Background**

After his employment with Defendant Kurtz Gravel ended in 1998, Plaintiff filed a request for payment of all pension benefits due to him.  (First Am. Compl., Dkt.  34, ¶¶ 28-29.)  Plaintiff was informed by Defendant Central States Pension Fund that he was to be credited for the years of service between 1995 and 1998.  (*Id*. ¶ 30.)  Believing that he had been in fact employed for pension purposes by Defendant Kurtz Gravel for a considerably longer period of time, Plaintiff filed a timely request for the review of this decision.

On July 21, 1999, a Central States Pension Fund manager forwarded a letter to Plaintiff denying Plaintiff's claim for additional years of what the pension plan terms as "contributory service credit."  In pertinent part, the letter states:

Per our records you currently have 3.625 years of Contributory Service Credit with Central States Pension Fund based on your employment with Kurtz Gravel Company from April, 1995 through October, 1998. In discussing your file with John Franczyk, an attorney with Central States, I was advised that it was the Fund's determination that you are not eligible for Contributory Service Credit prior to April, 1995 (the date that you became covered under a Collective Bargaining Agreement that provided for participation in Central States), because you were a bulker driver - which was a non-covered classification prior to this date.

Because the work that you performed, bulker driving, was not covered by a Collective Bargaining Agreement which required pension contributions to be made on your behalf, there is no basis for the Pension Fund to pursue contributions or provide you with credit prior to April, 1995.

(Pl.'s Statement of Procedural Challenge, Dkt. 41, Ex. B at CS 0211.)

Following the procedures given him, Plaintiff appealed this adverse determination to the

Benefits Claim Review Committee. In a letter dated December 22, 1999, the Chairman of the

Benefits Claim Review Committee summarized the committee's deliberations and findings as

follows:

At its November 9, 1999 meeting, the Benefits Claim Review Committee reviewed your appeal. After reviewing all information on file, and considering the information which you personally presented at the meeting of the Benefits Claim Review Committee, it was the decision of the committee that Employer Contributions are not owed on your behalf by Kurtz Gravel Co. prior to April 1995.

The committee realizes that you believe that Kurtz Gravel Co. should have made Contributions on your behalf prior to April, 1995; however, there is no evidence in file that prior to April, 1995 Kurtz Gravel Co. was required to make Contributions on behalf of the Material Handlers Division, which initially included three gravel train brokers and two cement hauler brokers. The Employer first reported Contributions on your behalf in April, 1995 as a cement hauler broker in the Material Handlers Division.

In order to become a Contributing Employer on behalf of a specific Bargaining Unit, the Employer must petition for acceptance to the Fund, sign a Participation Agreement and be accepted as a Contributing Employer by the Fund on behalf of the specified Bargaining Unit. For your reference, I am enclosing a copy of the Participation Agreement dated April 1, 1995 and a copy of the Fund's letter of acceptance dated January 12, 1996.

> Please refer to Article I the enclosed Pension Plan for the definitions of Contributions, Section 1.08; Contributing Employer, Section 1.07; Collective Bargaining Agreement, Section 1.06; and Bargaining Unit, Section 1.03.
>
> From April 1995 to October, 1998, you established 3.625 years of Contributory Service Credit (5 Vesting Service Years).  Based on this credit, you are eligible for a Contribution-Based Pension (Article IV, Section 4.03, payable no sooner than your 50th birthday.

(*Id*., Ex. C at CS 0187.)  The letter concluded with a statement outlining Plaintiff's right to appeal

this decision and attaching to the letter a set of Central States' appellate procedures.  (*Id*. at CS

0212.)

Pursuant to the appellate procedures given him, Plaintiff appealed this unfavorable

determination to the Central States Benefits Claim Appeals Committee.  In a letter dated March

20, 2000, a Central States Pension Fund manager summarized the committee's findings as follows:

> At its March 1, 2000 meeting, the Benefits Claim Appeals Committee reviewed your appeal.  It was the determination of the committee that Employer Contributions are not owed on your behalf by Kurtz Gravel Co. prior to April 1995.
>
> There is no evidence on file that prior to April 1995 Kurtz Gravel Co. was required to make Contributions on behalf of the Material Handlers Division, (of which you were a part) The Employer first reported Contributions on your behalf in April 1995 as a cement hauler broker in the Material Handlers Division.
>
> The Participation Agreement on file for Kurtz Gravel Co. - Material Handlers division indicates an April 1, 1995 effective date and the Fund's letter of acceptance indicates an April 2, 1995 effective date.
>
> Please refer to Article I, Sections 1.03, 1.06, 1.07 and 1.08 of the Pension Plan for explanations of Bargaining Unit, Collective Bargaining Agreement, Contributing Employer and Contributions.
>
> From April 1995 to October 1998 you established 3.625 years of contributory Service Credit.  However, you have established 5 Vesting Service Years and based on this credit you are eligible for a Contribution-Based Pension, payable as of your 50th birthday.  Please refer to Article IV, Section 4.03 of the Pension Plan for an explanation of Contribution-Based Pension.

> If you do not agree with the determination made by the Benefits Claim Appeals
> Committee you may appeal to the Board of Trustees.  Enclosed are the procedures
> to follow in making an appeal.

(*Id*., Ex. D at CS 0169.)

Following the appeal procedures, Plaintiff again sought review of this unfavorable determination, this time  with the Central States Board of Trustees.  The Board met on September 13, 2000.  Plaintiff's claim for benefits was one of the items on its agenda.  (*Id*., Ex. E at CS 0141-0145.)  The minute entry begins with a recitation of Plaintiff's employment history, as well as the history of his claim.  The Collective Bargaining Agreements ("CBAs") covering Kurtz Gravel Company employees were also summarized.  Plaintiff's social security itemized statement of earnings was placed into the minute entry, as well as relevant pension plan provisions.  (*Id*. at CS 0143-0144.)  In addition, Plaintiff was present and made a presentation to the Board.  The minutes summarize the Board of Trustees' actions as follows:

> At the meeting of the Trustees on September 13, 2000, there was a personal
> presentation by Michael R. Hill.  After a full discussion, a motion was made,
> seconded and unanimously carried, upon recommendation of Albert E. Nelson and
> Staff, to reject and deny the request of Michael R. Hill for a determination that he
> is entitled to Contributory Service Credit for periods prior to the time, on or about
> April 2, 1995, that Kurtz Gravel Co. first became obligated to remit Employer
> contributions to the Pension Fund relative to its Material Handlers Division
> Employees, with said denial on the basis of the specific circumstances presented,
> [sic].

(*Id*. at CS 1045.).

Pursuant to this Court's order, Defendant Kurtz submitted the Trustee's final determination and letter advising Plaintiff of the same on June 1, 2005.  (Notice of Filing, Dkt.  65.)  The Trustee found that Defendant Kurtz had been a contributing employer under three CBAs.  Since 1955, Kurtz participated in the Gravel Pit Agreement that covered "pit" workers.  Since April of 1979, Kurtz was a party to the Redi-Mix Agreement that covered gravel train drivers, mechanics,

warehousemen and loaders.  Since April of 1995, Kurtz has entered into the Material Handlers

Agreement with Teamsters Local 332 which covered transport drivers, specifically, gravel train

drivers and cement hauler drivers.  Cement haulers are also referred to as bulker drivers.  Gravel

train or cement hauler drivers may also be brokers, that is, individuals who use their own trucks.

Kurtz contributed on behalf of Plaintiff after April of 1995 under the Material Handlers CBA.  (*Id.*)

If Plaintiff were a cement hauler driver, he would have been covered only since 1995 under the

Material Handlers Agreement.  If, on the other hand, Plaintiff were a gravel train driver, then he

would have been covered under the Redi-Mix Agreement and the Material Handlers Agreement

and would have been covered since 1979.

    Plaintiff argued before the Trustee that he was a gravel train driver and offered the affidavit

of another employee, Lyman Halberstadt.[3]  Halberstadt's affidavit indicated that Plaintiff "at

times" performed the same duties as gravel train drivers by hauling gravel, that Plaintiff "drove

a truck that hauled for Kurtz," and that Plaintiff was "responsible for performing pick-ups and

deliveries for Kurtz." (Administrative Record ("AR,") at CS 0838).  The Trustee, however, did

not find the affidavit persuasive because Plaintiff only hauled gravel "at times" and because there

were numerous other affidavits (Kurtz, McCartney, Schluckbler) (AR at CS 0793, 0742, 0743),

stating that Plaintiff did not work as a gravel train driver but that Plaintiff worked as a cement

hauler.  In addition, Kurtz's seniority lists indicate that Plaintiff was a cement hauler, and

correspondence from Local 332 refers to Plaintiff as a cement hauler.  (AR at CS 0747.)  The

Trustee also noted that Plaintiff was not similarly situated to Halderstadt since Halderstadt was

classified as a gravel train driver on Kurtz's seniority list and Plaintiff was not.  (*Id.*)

---

[3]Mr. Halberstadt states that he was employed by Kurtz as a gravel train driver from 1973 to 1996.

Plaintiff filed a *pro se* lawsuit against his former employer on November 18, 2002.  He filed a second suit against the Pension Fund on October 2, 2003. (Case No. 03-CV-10247-BC.) Subsequently, he retained counsel, who amended Plaintiff's original complaint in both cases.   In an order issued January 7, 2004, the cases were consolidated, with all subsequent pleadings to be filed in the lowest numbered case. (Dkt.  38.)  After further proceedings, the instant motions were filed and argued.

### C.      Standard of Review

The parties concur that the appropriate standard of review is the "arbitrary and capricious" standard because Defendant Central States had discretion to determine eligibility for pension benefits.  (Pl.'s Br. In Supp. of Mot. to Reverse or Remand, Dkt. 71 at 9; Def.'s Resp., Dkt. 75 at 1.)  *See Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001).  "An interpretation or determination under ERISA is not arbitrary and capricious 'if it is possible to offer a reasoned explanation, based on the evidence.'"  *Bagsby v. Central States, Southeast & Southwest Areas Pension Fund*, 162 F.3d 424, 428 (6th Cir. 1998), quoting *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir. 1989).  "Even under such a deferential standard of review, a court must still inquire whether the decisions of a pension plan administrator are based on 'substantial evidence' and not on half-truths or worse yet, plain lies."  *Bagsby*, 162 F.3d at 429.

The court may not consider evidence that was not presented to the Administrator.  *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990)( "The *de novo* standard of review, like the pre-*Bruch* arbitrary and capricious standard, does not mandate or permit the consideration of evidence not presented to the administrator" and concluding that remand would be a "needless exercise"); *accord Wilkins,* 150 F.3d at 615.  Therefore, I suggest that the instant motion to remand should be denied even if judgment for the Defendant is not entered.

7

## D.      Analysis

Plaintiff asserts that he was a gravel train driver and thus covered by the CBAs between Kurtz Gravel and the International Brotherhood of Teamsters Local 332 entitling him to pension benefit contributions from the inception of his employment with Kurtz Gravel in 1979 under the Redi-Mix CBA. Defendant maintains that Plaintiff was a cement driver, which was not a covered classification, until April of 1995 under the Material Handlers' CBA. (AR at CS 0211.)

The parties agree that the most factually similar case is *Glascoe v. Central States, Southeast & Southwest Areas Pension Fund*, 35 Fed. Appx. 121, (6th Cir. 2002). The parties diverge, however, on application of the case to the instant scenario. In *Glascoe*, Plaintiff claimed to have worked as a truck driver for Brown Freight from 1967 to 1991 and had been a member of the Teamsters' Union during that time. Plaintiff Glascoe mistakenly assumed that Brown Freight had been making pension contributions. Instead, Brown Freight had only made pension contributions since 1973 because it determined that Glascoe was a "utility man" until 1973 and that coverage was not provided under the CBA for that category of employee. Coverage was only provided for "any Driver, Chauffeur, Driver-Helper operating a truck, tractor . . ." *Id.*

Glascoe offered evidence to show he was a driver, including: 1) an "employment affidavit" from Charles Brown, former president of Brown Freight, stating that Glascoe worked as a "city driver, etc." from 1967 forward; 2) affidavits from two co-workers stating that Glascoe was a "city pick up and delivery driver" from 1967 forward; 3) Glascoe's 1969 income tax return that lists him as a "truck driver"; 4) an affidavit from the former president of the Teamsters Local 480 stating that Glascoe worked under a continuous contract; 5) seniority lists compiled in 1985 listing Glascoe as an employee since 1967; 6) an affidavit from the current president of the Teamsters Local 480 indicating that to be placed on the seniority list pursuant to the terms of the CBA, the

8

person must be covered by the CBA; 7) testimony from Central States' Director of Benefit Services admitting he did not know what tasks a "utility man" performs and that it was possible that Glascoe was covered under the CBA even if he were a "utility man"; 8) a statement from the Social Security Administration that Glascoe was paid by Brown Freight from 1966 through 1972; 9) affidavits from two co-workers stating that they worked with Glascoe city pickup and delivery drivers from 1967 to 1991 and 1968 until 1988, respectively, and that there was no job category known as "utility man" that they were ever aware of and that all employees were paid in cash and had been told their union dues were paid for them; and 11) evidence that Brown Freight had engaged in "pension skimming" with another employee.

On the other hand, Central States offered: 1) an unsigned, unnotarized statement from Charles Brown, former President of Brown Freight, stating that Mr. Glascoe was a utility man and not covered until 1973; 2) evidence that no union dues were paid for Glascoe until 1976; 3) evidence that Glascoe did not receive his chauffeur's license until 1968.

Glascoe asserted that Brown Freight had been skimming off his pension as well as that of another employee and that the differences between Charles Brown's affidavits (from stating Glascoe was a driver to stating that he was a utility man, to eventually not remembering) was an attempt to avoid liability. Glascoe also countered that the reason he did not have a chauffeur's license before 1968 was that he was driving short routes in the city, not that he was not driving at all. He added that when he began driving longer routes (in excess of 10 miles) in 1968, he then applied for and received his chauffeur's license.

The Sixth Circuit in *Glascoe* found Glascoe's rebuttal arguments persuasive, affirming the District Court's conclusion that Central States arbitrarily and capriciously denied Glascoe's retirement pay because they failed to offer a "reasonable explanation" for the denial. The court

found that Central States' evidence -- the unsigned, unsworn affidavit from Charles Brown, the

timing of the chauffeur's license, and the lack of evidence that union dues were paid before 1976

– was "extremely inadequate, particularly in light of the evidence that Glascoe puts forth." *Id*. at

4.

In the instant case, I suggest that Plaintiff's evidence does not approach the level of  that

offered by Glascoe.  Where Glascoe had affidavits from the former company president and  two

other employees supporting his classification (without any indication that the job was occasional

rather than regular), in this case, Plaintiff has only the affidavit of one employee stating merely that

Plaintiff performed gravel hauling duties "at times."   Although Glascoe offered evidence

(affidavits) that the purported utility man classification may not have even existed, there is no

evidence that the instant Plaintiff's classification as a cement hauler is anything but legitimate.

Glascoe also offered evidence that the employer had engaged in pension skimming in the past;

whereas, no similar evidence has been presented in this case.  I therefore suggest that, while the

plaintiff in *Glascoe* offered substantial evidence to support his position, such evidentiary

foundation is lacking in the instant case.

Moreover, the employer's evidence in *Glascoe* was almost non-existent. The only affidavit

provided by the employer in that case was an unsigned, unnotarized affidavit from the former

company president that contradicted the properly authenticated affidavit offered by Glascoe to

confirm his classification as a driver.  The other evidence offered by the employee, that Glascoe

had not acquired a chauffeur's license until later on in his employment, was ambiguous and the

court found Glascoe's explanation more persuasive.

In contrast, in this case, Kurtz has offered the affidavits of three employees (Kurtz,

McCartney, and Schluckbier), stating that Plaintiff worked as a cement hauler and never worked

10

as a gravel train driver.  (AR at CS 0793, 0742, 0743.)  In addition, Kurtz's seniority list categorized Plaintiff as a cement hauler driver (broker), not a gravel driver (broker).  (AR at CS 0630,0722.)  In addition, correspondence from Local 332 referred to Plaintiff as a cement hauler (broker).  (AR at CS 0747.)  Thus, while the employer in *Glascoe* offered no persuasive evidence to support its classification,  Kurtz has proffered substantial evidence to support its categorization.

I thus suggest that applying *Glascoe*, *supra*, militates in favor of Kurtz and not Plaintiff, as *Glascoe*, does not provide a basis to support a finding that the Trustee's decision was arbitrary or capricious.  I further suggest that since the Trustee's decision is reasonable, based on the evidence, it is not arbitrary and capricious.  *Bagsby*, 162 F.3d at 428.  I therefore suggest that Plaintiff's Motion to Reverse the Administrative Decision or to Remand be denied, Defendant Central States' Motion for Judgment on the Administrative Record be granted, and Defendant Kurtz's Motion for Judgment on the Administrative Record be granted.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*,

11

29 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge.


                                    s/ *Charles E. Binder*
                                   CHARLES E. BINDER
Dated: May 1, 2006                 United States Magistrate Judge


                            **CERTIFICATION**

        I hereby certify that this Report and Recommendation was electronically filed this date,
electronically served on Scott L. Mandel and Paul M. Newcomer, and served in the traditional manner on
Charles H. Lee,  Alan D. Penskar and Honorable David M. Lawson.


Dated:  May 1, 2006                    By      s/Mary E. Dobbick
                                            Secretary to Magistrate Judge Binder